In re FOUR SEASONS CARE CENTERS, INC., f/k/a Lux Care, Inc., Four Seasons Care Centers, Inc.—Richfield; Four Seasons Care Centers, Inc.—Metro; Four Seasons Care Centers, Inc.—Capitol; Four Seasons Care Centers, Inc.—Central, Debtors.

UNICARE HOMES, INC., Plaintiff,

v.

FOUR SEASONS CARE CENTERS, INC.; Four Seasons Care Centers, Inc.—Richfield; Four Seasons Care Centers, Inc. —Metro; Four Seasons Care Centers, Inc.—Capitol; Four Seasons Care Centers, Inc.—Central; and Ann Wynia, Commissioner of the Department of Human Services, State of Minnesota, Defendants.

Bankruptcy Nos. 3–88–4067 through 3–88–4071.

Adv. No. 3–90–14.

United States Bankruptcy Court, D. Minnesota, Third Division.

Oct. 1, 1990.

Albert Solochek, Milwaukee, Wis., for plaintiff.

Lynn Starkovich, Minneapolis, Minn., for debtors, defendants Four Seasons.

Julie Harris, Asst. Atty. Gen., St. Paul, Minn., for State of Minn., Dept. of Human Serv.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on motion of the Ann Wynia, Commissioner of the Minnesota Department of Human Services, (Commissioner) to dismiss the cross-claims of Defendants Four Seasons Care Centers, Inc. (Debtors) for lack of jurisdiction. Appearances are as noted in the record. The Court having considered the arguments of counsel, having reviewed the files and records pertinent to the issues raised, and being fully advised in the matter now makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

Debtors owned and operated four nursing homes in Minnesota from November 1, 1987 to November 30, 1989. The homes participated in a Medical Assistance program which includes payment of Medicaid funds for covered services upon approval from the Commissioner and the Department of Human Services. Currently, there is an ongoing dispute between Debtors and the Commissioner as to amounts due and owing.[1]

The Debtors filed their Chapter 11 petition on December 23, 1988, and continued to operate the homes during pendency of the case until November 30, 1989. On that date, Unicare Homes, Inc., (Unicare) purchased the four nursing home facilities. On December 20, 1989, Unicare requested of the Commissioner an immediate audit and withholding of Medicaid payments as to Debtors. The request was granted.

Unicare filed this adversary proceeding on January 22, 1990. As to the Commissioner, Unicare seeks injunctive relief prohibiting payment of Medicaid claims to Debtors prior to a final audit, and restraint for any Medicaid overpayment claims she may have against it under MINN.STAT.

---

1. The reimbursement rate is subject to field audits which may reveal that the nursing homes were overpaid. If overpaid, a retroactive adjust-ment is made and overpayments are recouped or offset against amounts owing.

§ 256B.0641.[2] Unicare also seeks a judgment directing the Debtors to provide an accounting for all patient trust funds and for reimbursement of such funds owing it, if any.

The Debtors filed cross-claims against the Commissioner for order and judgment requiring her to process, turn over and pay Medicaid funds owing, without exercise of any right of either recoupment or offset. The Commissioner has refused to pay over any amounts, but is withholding all payments pending final resolution of the administrative audit dispute. Upon resolution of the dispute, the Commissioner argues, she will either seek to offset or pay over said amounts. The Commissioner by this motion seeks dismissal of the cross-claims for lack of federal jurisdiction under the Eleventh Amendment of the United States Constitution.[3] The Debtors assert that the Court does have jurisdiction in that the State of Minnesota, including the Commissioner, has waived its sovereign immunity rights in light of another state department, the Minnesota Department of Revenue, having filed a proof of claim in the main bankruptcy cases. According to Debtors, the filing of a claim by one state agency constitutes a broad waiver of sovereign immunity under 11 U.S.C. § 106(c) affecting all other state agencies. Additionally, Debtors assert that the Commissioner waived sovereign immunity under 11 U.S.C. § 106(a) through her conduct in the bankruptcy cases.

## II.

*A. Department of Revenue Claim Filing*

■ The Debtors argue that the Commissioner's sovereign immunity rights were waived under 11 U.S.C. § 106(c) when the Minnesota Department of Revenue filed its proof of claim. With the claim filing, Debtors contend, the Revenue Department waived sovereign immunity as to all departments and agencies of the State of Minnesota, citing *St. Joseph's Hospital v. Dept. of Public Welfare, (In re St. Joseph's Hosp.)*, 103 B.R. 643 (Bankr.E.D.Pa. 1989). The Commissioner argues that the filing of a proof of claim by one agency or department does not establish a waiver by another. The Commissioner relies on circuit court opinions as well as other cases to support her position. In particular, *see: WJM v. Massachusetts Dept. of Public Welfare*, 840 F.2d 996 (1st Cir.1988); *Jones v. Yorke (In re Friendship Medical Cntr.)*, 710 F.2d 1297 (7th Cir.1983).

Certainly, under 11 U.S.C. § 106(a) and (b), the filing of a claim by one state department or agency does not ordinarily waive sovereign immunity as to others or as to the state as a whole. It constitutes only a partial waiver as to the particular department or agency filing the proof of claim. 11 U.S.C. § 106 provides in pertinent part:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the *same transaction or occurrence out of which such governmental unit's claim arose.*

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate ... (emphasis added).

Section § 106(a) carefully limits the waiver of sovereign immunity by requiring that the claim against the governmental unit arise out of the same transaction or occurrence as the governmental unit's filed claim. *Hoffman v. Conn. Dept. of Income Maintenance*, —— U.S. ——, 109 S.Ct.

---

**2.** Under MINN.STAT. § 256B.0641, Subd. 2, the current owner of a nursing home is liable for the overpayment amount owed by a former owner. However, this subdivision does not limit the liability of a former owner.

**3.** The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI (1795). At the hearing on this matter, the Commissioner and Debtors agreed that the cross-claims could be litigated in state court, unaffected by any doctrine of sovereign immunity.

2818, 2822, 106 L.Ed.2d 76 (1989). The legislative history and comments to § 106 clarifies that: "the filing of a proof of claim ... by a governmental unit is a waiver by that governmental unit of sovereign immunity with respect to compulsory counterclaims ... arising out of the same transaction or occurrence." (HR Rep. No. 95–595, 95th Cong., 1st Sess. 317 (1977); S.Rep. No. 95–989, 9th Cong., Sess. 29–30 (1978)), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5815, 6274. Under FED.R. CIV.P. 13(a) analysis, a compulsory counterclaim arises from the same transaction when it is logically related to the claim of the opposing party and the counterclaim arises out of the same aggregate of operative facts as the initial claim. The same operative facts serve as the basis of both claims or aggregate core of facts upon which the claim rests. *In re Lile,* 96 B.R. 81, 85 (Bankr.S.D.Tex.1989).

Here, the Department of Revenue has waived immunity for itself (and arguably for other state agencies) under § 106(a), only regarding claims which are compulsory in nature in relation to its filed claim. The Commissioner's unfiled "claim" has nothing to do with the Department of Revenue's filed claim. The Department of Revenue and the Commissioner have two entirely different interests regarding these Debtors. The Department of Revenue has sales and withholding tax interests; the Commissioner's interest is based on Medicaid payments and offsets.

Recognizing the inapplication to the Commissioner of 11 U.S.C. § 106(a) and (b) through the filed claim of the Department of Revenue, the Debtors (buttressed by *St. Joseph's Hosp.*) rest on 11 U.S.C. § 106(c). That provision states:

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains 'creditor', 'entity', or 'governmental unit' applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

The Bankruptcy Court in *St. Joseph's Hosp.* held, by application of § 106(c), that: "where any of a state's agencies has filed a proof of claim in a bankruptcy case, that state has consented to the jurisdiction of the federal courts as to its claims *inter se* with the debtor." *Id.* at 651. The holding of the case is wrong for at least two reasons.

First, § 106(c) is not a waiver provision. It is a provision wherein Congress purports to limit state sovereign immunity without regard to any relinquishment of right by a state, through affirmative act or otherwise. Second, the provision has been narrowly construed by the United States Supreme Court in *Hoffman* to apply only to limited types of declaratory and injunctive relief. *See: Hoffman,* 109 S.Ct. at 2823. Clearly, the broad "waiver" or abrogation that the Court in *St. Joseph's Hosp.* reads into § 106(c) is not sustainable under *Hoffman.*

### B. Conduct By The Commissioner

■ The Debtors also assert that the Commissioner waived sovereign immunity by her conduct in seeking to offset or recoup Medicaid funds. According to the Debtors, the Commissioner, by this conduct, has established a "claim" in the matter within the meaning of 11 U.S.C. § 106(a), and has waived immunity regarding the Debtors' cross-claims because they arise out of the same transactions and occurrences.

Similar conduct by the Commissioner's counterpart for the State of California resulted in the Bankruptcy Appellate Panel for the Ninth Circuit to find waiver of sovereign immunity under 11 U.S.C. § 106(a), in the case of *Town & Country Home Nursing Serv. v. Blue Cross of Cal. (In re Town & Country Home Nursing Serv.),* 112 B.R. 329 (9th Cir. BAP 1990). *Town & Country* is wrongly decided for at least two reasons.

First, *Hoffman,* on similar facts stated: "Neither § 106(a) nor § 106(b) provides a basis for petitioner's actions here, since

respondents did not file a claim in either Chapter 7 proceeding." *Id.* 109 S.Ct. at 2822. The Ninth Circuit holding in *Town & Country* is not sustainable under *Hoffman*.

Second, *Town & Country* seemingly rests on the premise that: the mere pursuit by a state of nonbankruptcy rights and remedies in other than federal forums is, by itself, a waiver of its right of sovereign immunity from suit in a federal court. Apparently, the Ninth Circuit believes that state sovereign immunity might exist only as long as a state does not pursue a right or remedy anywhere.[4] Such an analysis seems to be a perverse application of the concept of "waiver" that transforms the constitutionally protected right of state sovereign immunity into an illusion.

### III.

In conclusion, because the Commissioner did not file a proof of claim, has not consented to be sued in federal court, and is expressly contesting federal jurisdiction, she has not waived sovereign immunity, nor has it been abrogated under 11 U.S.C. § 106.

ACCORDINGLY, IT IS HEREBY ORDERED: Debtors' cross-claims against the Commissioner are dismissed for lack of jurisdiction.

---

**4.** The circuit panel does not concede even that, however. In its own footnote four, it propounds:

"We do not decide whether the mere existence of a governmental claim would serve as a waiver of sovereign immunity if the government takes no action whatsoever to assert its claim, its claim is barred for failure to file a proof of claim, and the government receives no distribution; in such a case the very existence of a governmental claim could be in question. Those facts are not before us, however. *Town & Country* at 334.