**In re WILLIAM ROSS, INC., Debtor.**

**WILLIAM ROSS, INC., Plaintiff,**

**v.**

**BIEHN CONSTRUCTION, INC., and Commonwealth of Pennsylvania, Department of General Services, Defendants.**

**Bankruptcy No. 93–21659–MBM.**
**Adv. No. 95–2160.**

United States Bankruptcy Court,
W.D. Pennsylvania.

April 22, 1996.

J. Michael Baggett, Yurcheshen & Baggett, Pittsburgh, PA, for plaintiff.

Elizabeth A. O'Reilly, Office of Chief Counsel, Harrisburg, PA, for defendant Com., Dept. of General Services.

## *MEMORANDUM OPINION*

M. BRUCE McCULLOUGH, Bankruptcy Judge.

William Ross, Inc. (Ross), debtor and plaintiff in this adversary proceeding, seeks to recover monetary damages from Biehn Construction, Inc. (Biehn) and the Pennsylvania Department of General Services (DGS), defendants in this proceeding, resulting from Ross' performance on a subcontract agreement with Biehn. A default judgment was entered against Biehn by order of this Court on December 22, 1995. DGS has moved for a dismissal of Ross' claim against it for the following reasons: (a) improper service upon DGS resulting in lack of personal jurisdiction, (b) lack of subject matter jurisdiction by this Court due to the sovereign immunity of DGS pursuant to the Eleventh Amendment

to the U.S. Constitution, and (c) a failure of Ross' complaint to state a claim upon which relief can be granted.

After an initial hearing on this matter, this Court ordered both Ross and DGS to file briefs concerning DGS' affirmative defense of sovereign immunity from suit by Ross, and in particular, whether such immunity had been waived pursuant to § 106 of the Bankruptcy Code. If DGS may properly assert its immunity from suit in this proceeding, then this Court lacks jurisdiction to hear the merits of Ross' complaint.

 The Eleventh Amendment to the United States Constitution[1] generally prevents a citizen from proceeding against a state,[2] or an instrumentality of a state, in an action in a federal court unless that state has consented to such suit. *Bolden v. Southeastern Pennsylvania Transportation Authority,* 953 F.2d 807, 813–14 (3rd Cir.1991) (quoting *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 462, 65 S.Ct. 347, 349–50, 89 L.Ed. 389 (1945)), *cert. denied,* 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992). With respect to contract claims such as that presented in this adversary proceeding, the Commonwealth of Pennsylvania has not consented to suits against itself in federal court. *HBE Leasing Corp. v. Northeastern Pennsylvania Health Corp.,* 678 F.Supp. 493, 494–95 (M.D.Pa.1988). Instead, it has only consented to such suits properly instituted in the Commonwealth's Board of Claims, which shall have "exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts ... entered into with the Commonwealth." 72 Pa.C.S.A. § 4651–4; *see also HBE Leasing,* 678

F.Supp. at 495. However, a state's sovereign immunity may also be abrogated by the federal government. *In re Arid Waterproofing, Inc.,* 175 B.R. 172, 176 (Bankr.E.D.Pa.1994) (citing, e.g., *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). Such abrogations or waivers must be "explicit," "unmistakably clear," and "unequivocally expressed." *Id.; United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992).

 With respect to bankruptcy cases, 11 U.S.C. § 106 provides a clear expression of Congress' intent to abrogate, in specific instances, a state or state instrumentality's sovereign immunity. *Arid Waterproofing,* 175 B.R. at 178; *Nordic Village,* 503 U.S. at 34–36, 112 S.Ct. at 1015. Sections 106(b) and 106(c) limit such abrogation, respectively, to (a) "compulsory counterclaims to governmental claims, ... [ (ie., claims arising "out of the same transaction or occurrence" as the government's claim], [and (b) ] permissive counterclaims to governmental claims capped by a setoff limitation." *Id.* Section 106(a) extends Congress' abrogation of sovereign immunity to particular instances indicated by way of citation to specific sections of the Bankruptcy Code. At issue in this matter is whether any of the subsections of 11 U.S.C. § 106 act to abrogate, either partially or entirely, DGS' sovereign immunity with respect to Ross' claim against it.

### I. Abrogation of DGS' sovereign immunity under 11 U.S.C. § 106(a).

 Current § 106(a)[3] replaces old § 106(c), which was construed by the Su-

---

**1.** "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const.Amend. XI.

**2.** Despite the exact language of the Eleventh Amendment, "the Supreme Court has interpreted ... [it] to protect an unconsenting state from 'suit in federal court by its own citizens as well as those of another state.'" *Bolden,* 953 F.2d at 813 (citing *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100–01, 104 S.Ct. 900,

908, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974)).

**3.** "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201,

preme Court as an adequate expression of Congress' intent to abrogate sovereign immunity but only with respect to claims for declaratory and injunctive relief and not with respect to claims for monetary relief. *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 102–03, 109 S.Ct. 2818, 2823, 106 L.Ed.2d 76 (1989); *Nordic Village*, 503 U.S. at 34–40, 112 S.Ct. at 1015–17. The Bankruptcy Reform Act of 1994 amended § 106(c), renumbering it as § 106(a) and making clear that abrogation of sovereign immunity thereunder extended to claims for monetary relief as well. H.R.Rep. No. 834, 103rd Cong., 2nd Sess., 13–15 (1994), *reprinted in Norton Bankruptcy Law and Practice 2d*, 1995–96 Ed., at 99–101 (noting that this legislation will effectively overrule that part of the decisions of *Hoffman* and *Nordic Village* dealing with this particular issue). Ross' counsel notes this in its brief at pages 8–9 and therein quotes liberally from the House Report cited in this opinion. However, Ross' counsel omitted from its brief the following passage which is unquestionably dispositive of the issue of present § 106(a)'s applicability to Ross' case:

■ As suggested by the Supreme Court, section 106(a)(1) specifically lists those sections of title 11 with respect to which sovereign immunity is abrogated. This allows the assertion of bankruptcy causes of action, *but specifically excludes causes of action belonging to the debtor that become property of the estate under section 541.*

*Id.* (emphasis added). Indeed, 11 U.S.C. § 106(a)(1) conspicuously omits § 541 from those particular sections of the Bankruptcy Code to which sovereign immunity is specifically abrogated. This is unfortunate for Ross because its cause of action against DGS only becomes property of its bankruptcy estate by way of § 541. Because of this, Ross also may not utilize 11 U.S.C. § 542(b), which is listed in § 106(a)(1), to recover on its

action against DGS. Although Ross' action may be viewed as a "matured" debt of DGS, it is property of Ross' estate which may not be collected from a governmental entity in a bankruptcy court pursuant to that entity's sovereign immunity. Reconciling all of the above, § 542(b) should apply to debts of governmental entities only if such debts have already become liquidated (i.e., reduced to judgment). Therefore, because Ross' suit against DGS is an unliquidated *non-bankruptcy* cause of action, 11 U.S.C. § 106(a) does not provide a basis for abrogation of DGS' sovereign immunity.

## II. *Abrogation of DGS' sovereign immunity under 11 U.S.C. § 106(b).*

■ Ross claims that DGS' sovereign immunity has been abrogated under 11 U.S.C. § 106(b) [4] because its claim against DGS arises "out of the same transaction or occurrence" as the claims filed by the Pennsylvania Departments of Revenue and Labor & Industry in this case. [5] If Ross is correct, then there is no limitation as to the abrogation of DGS' sovereign immunity with respect to Ross' claim. H.R.Rep. No. 595, 95th Cong., 1st Sess. 317 (1977) and S.Rep. No. 989, 95th Cong., 2d Sess. 29–30 (1978), *reprinted in Norton Bankruptcy Law and Practice 2d*, 1995–96 Ed., at 99. However, Ross' claim against DGS is for damages resulting from Ross' performance on a subcontract, while the aforementioned filed claims in this case pertain to outstanding employment taxes. Although Ross, in its brief, sets forth a nexus between its claim and the two tax claims, such nexus is severely attenuated. While the three claims may be said to have had their birth in the same set of operative facts (ie., increased labor costs on Ross' part due to alleged delays by DGS and Biehn, as well as change orders pertaining to the subcontract agreement), this Court does not find it proper to view the claims for outstanding

1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title." 11 U.S.C. § 106(a)(1).

4. "A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same

transaction or occurrence out of which the claim of such governmental unit arose." 11 U.S.C. § 106(b).

5. The Pennsylvania Departments of Revenue and Labor & Industry have filed proofs of claim in this case for $32,759.36 and $36,428.05 respectively.

employment taxes as having arisen out of DGS' nonpayment of monetary damages with respect to a subcontract agreement with Ross. For the same reason, it is also not proper to analyze Ross' claim against DGS as having arisen from its nonpayment of taxes to the two tax-collecting agencies. Moreover, as mentioned earlier in this opinion, the point of 11 U.S.C. § 106(b) is to abrogate a governmental entity's sovereign immunity in the instance where the debtor's claim against such entity constitutes a compulsory counterclaim. It is most unlikely, however, that Ross could be compelled to bring its claim against DGS on the basis that it is a compulsory counterclaim under Rule 13(a) of the Federal Rules of Civil Procedure.

That Ross' claim is not sufficiently related to the two tax claims so as to invoke 11 U.S.C. § 106(b) is also in accord with *WJM, Inc. v. Massachusetts Dept. of Public Welfare*, 840 F.2d 996, 1003–1004 (1st Cir.1988); *In re Pace Enterprises of Columbia, Inc.*, 171 B.R. 444 (Bankr.D.Dist.Col.1994); and *In re Four Seasons Care Centers, Inc.*, 119 B.R. 681, 684 (Bankr.D.Minn.1990); *contra In re Cook United, Inc.*, 117 B.R. 301, 306 (Bankr. N.D.Ohio 1990) (this court curiously found the "same ... occurrence" to be the debtor's filing of the bankruptcy petition, a position which has been criticized by numerous courts). Therefore, 11 U.S.C. § 106(b) does not provide a basis for abrogation of DGS' sovereign immunity.

**III. *Abrogation of DGS' sovereign immunity under 11 U.S.C. § 106(c).***

■ Ross claims in the alternative that DGS' sovereign immunity has been at least partially abrogated because, pursuant to 11 U.S.C. § 106(c),[6] Ross may offset against the tax claims of the two agencies of the Commonwealth of Pennsylvania its claim for monetary damages against DGS. Ross' contention raises the precise question whether, pursuant to § 106(c), a debtor may offset against a claim or interest of one unit of a government a claim of its own against another unit of the same government. There is a split among the courts that have squarely addressed this issue, with a clear majority answering in the negative.[7] *See Four Seasons Care Centers*, 119 B.R. at 683–84; *In re R & W Enterprises*, 181 B.R. 624, 639 (Bankr.N.D.Fla.1994); *White v. Dept. Of Health and Human Services*, 171 B.R. 444 (Bankr.D.C.1994); *In re Rocchio and Sons, Inc.*, 165 B.R. 86 (Bankr.D.R.I.1994); *In re Blue Diamond Coal Co.*, 145 B.R. 895 (Bankr.E.D.Tenn.1992). However, *In re Gibson*, 176 B.R. 910 (Bankr.D.Or.1994), is to the contrary, holding that such interagency offset is permissible and that a governmental entity's sovereign immunity may be thereby partially abrogated. *Id.* at 916 ("When the United States, through the Internal Revenue Service, filed its proof of claim in this case, it waived its immunity as to all its agencies.").

**6.** "Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate." 11 U.S.C. § 106(c).

**7.** Ross' counsel, in its brief advocating interagency offset, cites *Arid Waterproofing*, 175 B.R. at 177, and *In re St. Mary Hospital*, 125 B.R. 422, 425 (Bankr.E.D.Pa.1991), as support for its position. However, the bankruptcy court in *Arid Waterproofing* merely "assume[[d] as correct ...[, without further analysis, the proposition] that the filing of a proof of claim by one state department may abrogate an immunity right that could be raised by another state department." *Arid Waterproofing*, 175 B.R. at 177 n. 4. Moreover, the bankruptcy court in *St. Mary Hospital*, while apparently sanctioning interagency offset, rested its decision in large part on an earlier decision of that court, *In re St. Joseph's Hospital*, 103 B.R. 643, 651 (Bankr.E.D.Pa.1989), which

sanctioned interagency abrogation of sovereign immunity but only with respect to what is now § 106(a) *and not §§ 106(b) or 106(c)*. *St. Mary Hospital*, 125 B.R. at 425 (quoting from *St. Joseph's Hospital*, 103 B.R. at 651). The following quote from *St. Joseph's Hospital*, which appeared in the *St. Mary Hospital* opinion, is telling:

> *It is true*, as the Defendants argue[,] that *those* sections [present §§ 106(b) and (c)] provide a basis for jurisdiction *only* as to claims arising out of the same transaction or occurrence [as], or to the extent of[,] the *particular governmental agency's claims*. However, the Debtor's invocation of § 106 here *is not dependent* upon [present] §§ 106[(b)] or 106[(c)] ... [but rather] on other federal jurisdictional bases, including [the] Medicaid Act and 42 U.S.C. § 1983, as applied through [present] § 106[(a)].

*Id.* Therefore, these cases cited by Ross' counsel provide little, if anything, in the way of persuasion to this Court in its analysis of this particular issue.

The *Gibson* court's decision on this issue is based in large part upon its analogy to the similar issue of interagency setoff under 11 U.S.C. § 553(a).[8] *Id.* at 915. The *Gibson* court pointed out that "[i]n opposing court approval of setoff [under § 553(a) ] a *debtor* will often assert, as [the governmental] defendants here have done, that because two different agencies were involved in the transactions ... setoff is unavailable." *Id.* (emphasis theirs). After apparently concluding that interagency setoff was proper under § 553(a), the *Gibson* court then permitted the assertion of interagency offset against a governmental agency under § 106(c). However, that court also noted that "[c]ourts addressing th[e] issue [of interagency setoff] within the context of § 553(a) have divided on this question." *Id.* at 916 (citing numerous cases at footnote 6 of its opinion).

The Third Circuit and courts in the Western District of Pennsylvania have not yet addressed either the issue of interagency setoff under § 553(a) or interagency offset under § 106(c). This Court, after having considered both issues, finds that interagency offset is not permitted by the Bankruptcy Code under either § 106(c) or § 553(a). Although this Court is enamored with much of the *Gibson* court's rationale, it nevertheless cannot overlook the plain language of 11 U.S.C. § 101(27), which defines "governmental unit" and which is, thereby, implicated in both § 106 and § 553.[9] While the *Gibson* court is correct in noting that lower tier units of a government (ie., a "department, agency, or instrumentality") operate on behalf of that government, this Court cannot ignore the fact that those same lower tier units are also explicitly included within § 101(27)'s definition of "governmental unit." Because of this inclusion this Court therefore

finds that it is constrained to recognize, rather than look past (or through), these lower tier units when applying § 101(27) in the context of either § 106 or § 553.[10] Therefore, because this Court cannot sanction interagency offset under 11 U.S.C. § 106(c), such section does not provide a basis for partial abrogation of DGS' sovereign immunity.

## IV. *Conclusion.*

Because none of the three subsections of 11 U.S.C. § 106 apply to the facts of this case, DGS' sovereign immunity has not been abrogated. Because DGS has not waived its immunity to suit in this case in any other manner, this Court lacks jurisdiction to entertain further any of Ross' substantive claims as they pertain to DGS.

Accordingly, defendant DGS' motion to dismiss plaintiff Ross' claim against it is

GRANTED. An appropriate order will be entered.

### *ORDER OF COURT*

AND NOW, this 22nd day of April, 1996, it is hereby ORDERED, ADJUDGED and DECREED that Defendant's, Commonwealth of Pennsylvania, Department of General Services, Motion to Dismiss Plaintiff's claim against it is GRANTED.

8. "Except as otherwise provided in this section ..., this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...." 11 U.S.C. § 553(a).

9. Section 553(a) does not refer to "governmental unit," instead only referring to "creditor." Nevertheless, "creditor" is defined at 11 U.S.C. § 101(10) as an "entity." "Entity" includes, in-

ter alia, a "governmental unit," 11 U.S.C. § 101(15), thereby making such term relevant to § 553(a). *See also Gibson,* 176 B.R. at 915 n. 5.

10. This rationale also provides additional support for this Court's decision that § 106(b) is inapplicable to the facts of this case. Because § 106(b) limits "governmental unit" by use of the term "such" in precisely the same manner as is done in § 106(c), § 106(b) therefore also prevents interagency abrogation of sovereign immunity.